Okay, shall we call the last matter? In re Atiyeh, Andy Atiyeh, Appellant in Pro Se, Tom R. Normandin, Counsel for Appalee, American Business Bank. Okay, why don't we take appearances first? Mr. Atiyeh, you go ahead. Go ahead and make your appearance. Andy Atiyeh, Appellant in Pro Se. Good morning, your honors. My name is Tom Normandin. I represent the Appalee American Business Bank. Okay, well, Mr. Atiyeh, you've got the appellant's role here, so you get to reserve some time for rebuttal if you'd like to. Should we say five and we'll let you know? Okay, come on up to the lectern. Good morning. Thank you for having me here. Absolutely. What I wanted to do is up front say I'm going to read from this. It's no disrespect. I just want to try and keep on track. So this appeal has to do with the Chapter 13 bankruptcy that was denied by the Bankruptcy Court of the Central District. Let me start by saying this bankruptcy to me was not a strategy. It was a necessity, and I'll explain that in a second. My wife and I had lost our only source of income after a small business, our small business, our LLC was a victim of unlawful actions, up to and including judicial eviction. A jury later unanimously found for us in fraud and breach of contract and awarded us actually substantial damages, but the judgment remains unpaid because we're pro se and we don't know our way around as well. But they left us without resources, and when I appear in pro se, it's not to say I want to displace any attorneys. I know pro se litigants are seen with maybe, well, I'm doing it out of necessity. I'm not doing it for any other reason. Anyway, so we were in a desperate spot earlier this year, and we decided to declare bankruptcy following Chapter 13 just to get a second, get things under control, catch my breath. And also to protect our home that was literally the only asset that we had left, and it's our home of 32 years. So I applied for Chapter 13. This appeal challenges two things regarding that matter. First was a dismissal as a result of, literally as a result of asking for an extension, which was denied by the court. I believe the court applied the wrong standard of cause instead of excusable neglect. Can we pull that apart a little bit? I thought the first issue was were you entitled to an extension? I thought the court did apply excusable neglect there. Do you think they didn't? I don't think they did because the court, in fact, remarked that what happened is I worked all the way until the end. I couldn't turn it in. I was taking it seriously and filed for an extension before midnight. I realized at 2 a.m. that I attached the wrong declaration, so I refiled it, and it was a day late. So I think Judge Hull wrote that it was late and he was not going to accept it. What I thought he said, and you're going to correct me here if I'm wrong, is that he needed to find excusable neglect, and he didn't find it. So if you think that was erroneous or not consistent with applicable law, go ahead and tell us why you think that's true. Well, let me – I don't think it was true, and there may be something else that went on, and maybe it's because he was looking for something. This was due on, I think, the 1st. The bank filed their objection to an extension on the 2nd. And then on the 4th, I tried to apply to their opposition, but Judge had already ruled in his ruling. He quoted their – he said that they did submit and that we were – he found me applying in bad faith, and he – I can't remember the other thing. But it was essentially it seemed that he was – yeah, maybe he was looking for something. I'm not sure that I got a chance to show neglect, but I did see that there was at least some sort of dependence on their filing, which is – I feel is a problem for my due process. And then taking it from there, that same day I submitted a – they submitted, by the way, that objection not as a creditor. I'm not sure they're a creditor on the case yet. I know there's a process for them to go through to become a creditor. I think they're a party of interest or interest party, but I'm not sure they're a creditor. Yet they filed an objection, and they filed also a – what is it – a motion to be excused from the mandatory stay with bankruptcy should that ever come up. I wrote a reply to that and explained all that. That reply somehow – and I'm not saying anyone did anything wrong – somehow it disappeared from the record until yesterday. And I wrote a benchmark about that. Until yesterday I got a call from the deputy – the courtroom deputy saying, oh, we found it. We had – we thought that you wanted to withdraw it, and so it was withdrawn, and now it's back on the record as of yesterday. So all the consideration that Judge Hull gave to my extension, and then there was a hearing I'll talk about in a second regarding the stay for – bankruptcy stay. My position was never considered because that document didn't appear until yesterday. And I keep saying that they – this is American Business Bank is the party of interest, and they are represented by Provost Normand and Don Rocha. The panel, your honors, might be familiar with that name from a case that went on over the last year where the – it was in Enri Fiedler. And they were admonished – actually they were sanctioned pretty heavily, and that was affirmed by the Bank of Seattle Board last year, and then also affirmed by the Ninth Circuit this year. And the reason I bring that up is there are things that happened since I applied for this appeal that, as I read, that case it was deja vu in terms of how they worked the process. Well, all we can do is take account of what happened up to the time the judge made the decision you think was a mistake. Okay. Okay. I know you probably believe that passionately, but, you know, we're not going to make any other findings here. I understand. Thank you, your honor. Thank you. I appreciate it. Thanks. Well, up until then, when the judge made the first mistake, like I said, I believe he applied the wrong standard. But there was another mistake that was after that. He made a decision on their stay, an interim decision, without jurisdiction because by then the jurisdiction had moved to this panel. But that's because you had filed a notice of appeal? That's because I filed a notice of appeal about two weeks before. But the decision that is a stay relief comes after the notice of appeal, correct? I'm not sure how jurisdiction works. I thought that once the notice of appeal was filed, then the matter is … Well, it divests the trial court of jurisdiction over anything that's relevant to the appeal, but the stay relief is a separate issue from the question of whether you should be granted an excusable neglect for failing to having filed your plan on time. Yeah. Correct? Well, but that hearing went on without me being there. And you didn't file a notice of appeal after the entry of the order that granted stay relief? I filed a notice of appeal and I amended it to include that. I don't know if that needs to be a different … You intend to have us consider the relief from stay as well, right? Yes. Okay. I got you. And it's important because all that led to … This isn't your consideration, but I just wanted to let you know, led to the illegal sale of our home. And I only bring up the other case just because it's a similar type deja vu pattern. I'm not going to go into what they did after that, but they ended up selling our home while it was in mandatory stay under AB 2424. They tried to sell it ten times in eight months, and when they weren't successful, they did it that way. But the stay on bankruptcy, excuse me, being excused from staying for bankruptcy filing, they made sure that I was not able to stop them by filing for bankruptcy. Or that was the end result, but it was obvious that was their intent. The second thing that they did was as soon as they got that order, and there was … There were statements made about my motivation, my character, my this and that, that I did not get to participate in. There were two hearings that happened that were material to us losing our home that I did not get to participate in, but they got full consideration. What was the … I'm sorry. No, go ahead. As a courtesy, you're within your four minutes, but I think Judge Gannon wants to ask you a question. Oh, I'm so sorry. Judge Gannon wants to ask you a question. That's more important. No, I just was concerned. I understood the second hearing that you didn't attend was the stay relief hearing. What was the first hearing you didn't attend? It wasn't a relief hearing. I'm sorry. It was a discretionary decision by a judge on the late … on being two hours late and asking for an extension on … On the plan. Yeah, and it was one item that was left, and I wanted to do it properly. I just didn't want to … I could have just checked anything and … But even then, he would have the discretion to decide whether to grant it, number one, and number two, it was on the last day that you could have possibly have filed. Right. So what worries me is, as I mentioned, A, that there was … and maybe there's … maybe I'm getting the standard wrong in terms of whether he did try and apply excusable neglect, but that he quoted the bank's … American Business Bank's objection in that decision to not grant the extension, and then immediately thereafter dismissed the bankruptcy application with the word bad faith appearing in his decision. So I don't feel that that was … I was treated properly in terms of … anyway, that's all. Okay. You've got about two minutes. Is this a good time to pause? Yeah. Okay. Thank you very much. Thank you, Judge. Thank you, Your Honor. You're welcome. Good morning again. Tom Norman, and on behalf of American Business Bank. Good morning. Two things, Your Honor, Your Honors, and that is that Mr. Atiyah does have a license to practice law, did have a license to practice law, so his excuse for not being able to file a timely motion to extend the time to file the plan and et cetera is not well taken. His license was taken away in 2020. That's number one. Number two, as set forth in our motion for relief from state, this was a standard loan, a small business bank loan where the Atiyahs borrowed money to start their business. They had a problem with their landlord, not their lender, their landlord. The landlord apparently unlawfully evicted them. That was in 2020. We could have foreclosed as early as 2022, did not. We went through a series of extensions. Refinance your property. Pay us off. All you have to do, you have plenty of equity even if you have to get a quote-unquote hard money loan. You can go out and get it. You have plenty of equity. Nothing. They refused. We filed our notice of default, notice of sale. They have filed five actions, this being one, one in the U.S. Court of Appeals now, two in Orange County Superior Court, and one in Los Angeles. All over the same thing. Wrongful foreclosure. Their theory is that when the landlord evicted them wrongfully, our guarantee disappeared. The guarantee and the deed of trust on the house disappeared. Every court has rejected it. Lending would come to a standstill if that premise was ever accepted in law. So we worked with them time and time again to no avail. Please, please refinance. Pay us off. Nothing. Nothing. Just nothing from them. So here we are. We think the court bent over backwards in working with them, giving them the first extension. The first extension time expired on March 31st. On April 1st, the day after the expiration, they filed a second one. Excuse me. Mr. Attire, the debtor, filed a second application for extension. And in it, it was almost verbatim what he had placed in the first time. I can't get an attorney. No real reason why a second extension would make any difference. The court considered it, denied it. It's not something that properly we assert. And based on that, we submit unless there's any questions. Judge Niemann? Judge Gamp? Okay. Thank you. Okay. Thank you so much. Okay. Okay. If you like, you've got a minute 56. Okay. Your Honor, there was a lot more than what happened with the rejections. So I'd like to just respond since you brought it up. My grandma has a driver's license, and nobody forces her to use it. She uses it if she wants to. She doesn't use it. I'm in a different, completely different industry than legal practice, and I've not ever practiced as a lawyer. I keep my license. I'm a member of the state bar, but I'm not practicing the dark arts as others may be. There is a big, a couple big mistakes. And, again, that's why I brought up the last case that talked about frivolous claims, unchecked facts, and improper motivation, and actually a lot of different really strong language. Most of what was said is incorrect. We never had a contract with American Business Bank. It was a, our LLC had a contract. It was a commercial contract with them. They, after the LLC, the LLC never defaulted. They were kicked out of the building. But American Business Bank came back and said, look, we'll cut you a deal. You can sign this, what is it called, reaffirmation request, and then, you know, we'll stay any kind of eviction. We were scared. We lost everything at that point. We were not going to sleep in the car with our kids and their dogs. So we signed it under duress. We signed it under duress, and what it said was, you are now immediately responsible for the loan, and we're going to, it's a 10-year loan, but it's going to be due immediately, and we want you to please, I don't think they said please, if you don't pay us back, we're going to evict you. And, in fact, before that, Mr. Dormand and himself said, if you don't sign this tomorrow, we're going to evict you. I think in some circles that's called. We're kind of outside the record on that point, and you're about 20 seconds over your time, so unless you have a final point. My final point is, Your Honor, please take with a grain of salt that as soon as they sold our house, they ran, they made us out to be vexatious litigants, and the number one case they used is the first case we filed against them in Superior Court, where they said either withdraw the case with prejudice, or we're going to foreclose next week. Okay, thank you very much. Okay. Thank you. Thank you. All right, we'll take the matter under submission. We'll get your written decision as soon as we can, and with that, I think our calendar is concluded, and we're in recess, right? Okay, thank you. Thank you very much. I'll rise. This session is now adjourned.
judges: Lafferty, Gan, and Niemann